Good afternoon. The panel is happy to resume court and we are obviously reconstituted with Judge Noonan sitting with us today. We appreciate the accommodation of counsel for the State in making the change to accommodate counsel for the appellants. I want to remind you all counsel that the clock runs down and that if you want to save any time that you need to monitor your own time. And with that, we're ready to hear from Mr. Jay. Thank you, Your Honor. I'm here to please the Court to plead the case for Appellant Terrence Brownlee. I will save a few minutes for rebuttal. The magistrate judge in this case committed two crucial legal errors. First, he improperly weighed the evidence at summary judgment and resolved a material factual dispute. Second, he summarily dismissed the due process claim based on a narrow view of Section 1983 that has been overturned by subsequent controlling authority. I'll discuss each of these two points in turn. First, on the Eighth Amendment claim against the Murphy defendants, Mr. Brownlee presented competent evidence, admissible at summary judgment, that created a material factual dispute about what happened in the rotunda that day. Mr. Brownlee presented evidence that he did not resist, and the undisputed evidence shows that he was alone in the room. He was the only defendant facing five corrections officers, and that he had taken no aggressive step to provoke the officers. At most, he had told the officers that what they had done in an incident that had already concluded that their conduct had been wrong. That incident was over. The inmates who had previously caused the disturbance had not only been subdued, but had been wheeled out of the rotunda on gurneys. The incident was over, and the atmosphere, if it had once been charged, was returning to normal. Mr. Brownlee was the only inmate in the room, and the aggressive conduct by the corrections officers in this case simply was not justified by any conduct of Mr. Brownlee on the facts as Mr. Brownlee has presented them. And if it didn't do that, it would not have been the case that Mr. Brownlee was facing. Kennedy. Mr. Jay, regarding the due process claim, what remedy precisely does Mr. Brownlee seek, and does that remedy implicate the duration of his confinement? Well, Your Honor, the only thing in the record on that – when the magistrate judge dismissed his claim was Mr. Brownlee's complaint. And in the complaint, he seeks damages based on the due process violation, money damages based on his confinement and administrative segregation. And there's nothing on the face of that complaint that implicates the duration of his confinement. You argued in your brief, counsel, that all he was seeking was damages, and he wasn't seeking to change the terms of his confinement. That seems to me to be irrelevant. If the judgment – if a due process judgment needed to support damages suggested that he was unconstitutionally deprived of his good time credits, and for that he was entitled to damages, that would also suggest that he shouldn't have had those good time credits taken away. And it seems to me that that remedy is this habeas remedy, not a 1983 remedy. I mean, I think it's fine if your client wants to say, go ahead and take away my good time credits. I'm happy to take a cash award. But that doesn't get around Heck v. Humphrey. Well, Your Honor, I have several responses to that. First, in this case, it's not clear that the relief that he's seeking would necessarily require the restoration of good time credits and that that would affect the duration of his sentence. You've answered a little different question. You answered that it wouldn't necessarily require the restoration of good time credits. And my concern is a little different. And that is that in order for your client to prevail, we are going to have to conclude that the prison officials acted unconstitutionally when they deprived him of his good time credits, and that that will necessarily implicate the validity of the deprivation of good time credits. I take your point, Your Honor. And that the Heck doctrine does require looking at more than just the money relief sought in the complaint. The point that I was trying to make is a preliminary one, that, you know, because of the stage at which the due process claim was resolved, it's not clear exactly what happened in the hearing and, you know, whether Mr. Brownlee was deprived of good time credits that in fact extended the length of his sentence. And I say that because Mr. Brownlee is in prison for life. But even assuming that at the hearing, you know, as the State suggests in its brief, even assuming that at the hearing the consequence was that Mr. Brownlee was deprived of good time credits, we think that, you know, the rule in Peralta v. Vasquez suggests that Mr. Brownlee should be allowed to explain to the court that he's not seeking any restoration and that the concern raised in the — in Heck and Edwards and the cases that follow them, that the exhaustion and other procedural requirements of habeas could be circumvented simply wouldn't be implicated in this case. Okay. How can your client recover money against the prison officials without implicating the validity of the proceedings against him? What set of facts is he alleged in the complaint that won't go to whether he was wrongfully accused here? Well, the — it's certainly the case, Your Honor, that the complaint is not perfectly clear on this point, but Mr. Brownlee alleges that he was wrongfully confined in administrative segregation and that that result obtained by wrongfully depriving him of the opportunity to call witnesses and by allowing a biased decision-maker to participate. So now we don't have the benefit of a full — Are those matters that could be challenged in habeas? If, Your Honor, the proceeding was purely one about good-time credits, and if Mr. Brownlee were serving a defined term so that the addition or subtraction of good-time credits necessarily, you know, affects the amount of time that he will actually serve in prison, then in that case, then he might be able to — he presumably would be able to challenge it in habeas. Go ahead. Confinement in administrative segregation, however, is not cognizable in habeas. That's properly the subject of a 1983 action. Okay. I want to make sure I understood your answer. Are you telling me, then, that if he were not serving a life sentence, that he could challenge that in habeas? What do you mean by that, Your Honor? Well, you gave me — you answered a couple of different things there, so I'm trying to — I perhaps was too summary in describing that, but I may not be — maybe I can't identify precisely what in your answer I'm referring to. Irrespective of the amount of — irrespective of the length of his sentence, he couldn't challenge wrongful confinement in administrative segregation in habeas, particularly because that confinement is now over. He could — he could challenge the duration of his sentence in habeas. And, you know, if the — if the good time credits were a gateway for eligibility for parole, for example, but if the ultimate parole decision were discretionary and not based on a mechanical computation of the number of credits that he had, then that also is probably the subject of a 1983 action, and that's the whole thing of the court. And administrative segregation decisions are challengeable under 1983? That's my understanding, Your Honor, yes. Do you have a case? Well, Your Honor, in Wilkinson v. Dotson, which is also the discretionary parole case, the Court, you know, reiterates its rule that the duration of confinement is the — you know, is the key borderline between 1983 and habeas in the — in Pryser, Hack, Wolfe v. McDonnell and the long line of cases sort of policing the boundary. Counsel, if — if we find a constitutional violation in your client's case, do we need to send this back to the district court to make a determination regarding qualified immunity, or is this something you think we can decide? Well, Your Honor, I think that it would be appropriate to send it back because I don't think that the district court — in this case, the magistrate judge directly confronted that issue. The magistrate judge, you know, proceeded from the premise that Mr. Brownlee hadn't even succeeded in showing a constitutional violation, and so, you know, if this court disagreed with that and held it on the summary judgment record, Mr. Brownlee has shown a constitutional violation. I think it would be appropriate to allow the fact finder to take the — or the district court that, at summary judgment, is the fact finder, you know, could — to take another look at whether any reasonable officer on these facts, you know, could have acted in this way. You know, of course, it is a question of law. You know, qualified immunity is a question of law, but under the saucier, you know, two-step, you know, the Eighth Amendment question must be resolved first. If the Court has no further questions at this time, I'd like to reserve my remaining time. Thank you. Roberts. Mr. Sonata. Good afternoon, Your Honors. May it please the Court, my name is David Sonata, and I represent Defendant Appellees. In this case, existence of a factual dispute would not preclude the finding of summary judgment. In this instance, the facts upon which the officers perceived Mr. Brownlee as a potential threat, as an attacker, or as a person who would incite the other inmates for unrest Mr. Sonata, do you agree that the district court applied the wrong standard to dismiss these due process claims when it found that all challenges to the present disciplinary proceedings must be handled in habeas as opposed to a 1983 action? I agree. I believe that the district court did use the appropriate standard. That it did use the appropriate standard. So you're saying that it should have been habeas? Yes, sir. Okay. And you heard the colloquy between Judge Bybee and Mr. Jay. Anything you heard there, did any of that change your mind? I wanted to add that in our view, that there was sufficient information in the complaint for the magistrate to have found that the due process allegations were heck barred, in particular, Mr. Brownlee was alleging not only bias, not only the allowance of certain witnesses, but he was asking for the disciplinary conviction to be overturned. One of the complaints was that they didn't overturn it when they should have. What is your perspective on Mr. Jay's argument that the boundary between a habeas claim and a 1983 claim is the length of confinement? I believe that's – it is irrelevant. I believe that – Is there any case law, any of our case law that bears on that? No, sir. Okay. Counsel, what about the question of challenging administrative segregation? Can that be challenged in habeas? Yes, sir. Okay. And do you have a case for that? Go ahead. I'm sorry. Go ahead. No, no, please. Edwards, Your Honor. Well, I'd be interested in hearing what you think of the undisputed facts on the main question. The undisputed facts here is that Mr. Brownlee interjected himself. That's a very evasive word. It's usually a verb that indicates what happened. Interjected is a meaningless word. Mr. Brownlee told the officers that what they did was wrong. He used words that rebuked him. That's perhaps a fair statement. That is correct. In addition, Your Honor, Mr. Brownlee told the officers that what they did was wrong in the wake of two of the defendants having been involved in a violent fight with two other inmates. Yeah. In addition, these comments were made by Mr. Brownlee in front of 30 to 40 other inmates who were agitated, yelling. On the other side of the wall. That is correct. So what you've told me several facts, and said in addition, you haven't told me a single fact yet that makes any sense for you. Well, Your Honor, the officers, all of the facts together. No, no. Each one is a zero. Three zeros add up to zero. If any one of them had any significance, I'd say yes, half, was it a quarter? But then each one is a meaningless thing. I respectfully disagree, Your Honor. What do you think was the significant fact to you? All of them together are significant. Tell me how much each one was worth. Well, Your Honor, in the situation where a correctional officer has been involved in an altercation, he sees another inmate, Mr. Brownlee, says you're wrong. Also, while this is going on, there are 34 inmates, 30 or 40 other inmates, on the other side of a door who are excited, who are yelling. The reasonable perception of the officers is that something will happen. Either Mr. Brownlee will become violent or that he will incite the other inmates to more unrest. But there are like four officers out there, are there not? And they take this one guy and they pull his leg up and hurt his back. Isn't that almost a quintessential example of excessive force, counsel? No, I disagree, Your Honor, that their actions in lifting his leg were tempered. Tempered in what way? You've got all these other people behind the jail door. Yeah, yeah, there might have been some yelling and so on. But the reality is they've got four people, prison guards, tough guys, presumably. Somebody says, you know, you're doing the wrong thing. Does that warrant that level of violence against him? Yes, Your Honor. Do you think that's an appropriate standard that that ought to be normal conduct for the prison guards? In the midst of the manual, I'm sorry, should it be in the manual? This is the appropriate way you just get these. If anybody starts yelling at you, you just take them against the wall and you lift their leg up and you hurt their back. Again, Your Honor, the facts have to be placed in the situation. And I think that's a good point, Your Honor, because I think it's a good point to make in the context of the situation of what the officers perceived. And in this situation, there were multiple things happening. The fact that there was an altercation, a fight between correctional officers and two other inmates, that as that was being resolved, that Mr. Bramley, who was seated, got up off the floor. He was in close proximity to those officers. At the same time, there were 30 or 40 other inmates who were galvanized by the event. Now, let's say that you were the person that was sitting there. Let's say you were the person that was sitting there and you said, hey, you're doing the wrong thing. That's just wrong. And if they did to you what they did to him, would that be OK? If I was in prison. You wouldn't be, of course, but if you were. You're a trained lawyer. Say you're there. Everybody knows you're a lawyer. And you're down there and you just say, hey, that's wrong. You're just doing the wrong thing. And they did to you what they did to Bramley. Would that be acceptable? That sort of underscores the caveat that this situation needs to be looked at in the eyes of a reasonable correctional officer. That what would seem appropriate to you or I, if we were in that situation, would be in a completely different context. But doesn't the question of whether they behaved reasonably have to go to a jury? You have Mr. Bramley who says this was not reasonable. It was clearly excessive. There's four of them. They jump me. They pull my leg back in a way that hurts my back. Here's all the medical documentation. And you have four officers that come and say, no, this was perfectly reasonable under the situation. Here's what we're facing with. Well, that may be compelling testimony, but it seems to me that we've at least entitled to have a jury decide that question. I disagree, Your Honor, that in this context, that those are undisputed facts. That the judgment of the court. What's undisputed? That Mr. Bramley protested the action of the correctional officers. That two of the correctional officers were resolving an altercation. That there were 30 or 40 other inmates. That Mr. Bramley was in close proximity. That those undisputed facts provide the basis for determining the reasonableness of the officer's perception of that situation and how they reacted to that situation. That would not necessarily be a jury question. That is a question of law in terms of a qualified immunity analysis and also a constitutional violation. Can I, I'd like to take the chance to comment on your brief. Because I wrote an opinion. I think it was probably not obtainable by you before you wrote your brief. But it involved another qualified immunity case. Where the defense of a California highway patrol officer claiming immunity, the appeal came here from a denial of immunity. And the brief for the state stated the facts essentially in favor of the CNHP, not in favor of the plaintiff. And even though the brief said in so many words, we understand that an appeal like this is only the facts as conceded. It can provide a basis for an appeal. And they went right ahead and violated that standard. And I commented on that and I'll tell you seriously considered dismissing the appeal because the standard had been violated. That extraordinary relief of coming up here on an interlocutory appeal. You, of course, did not appeal this. But you're in a somewhat similar situation. You have to concede the facts. You can't come up here and I do your set of facts. And I just want to get that message back to your unit, if you would, with qualified immunity people. And I'll give you three examples. I won't go more than that. On page 6, you say that Brownlee refused to comply with the order or could not leave because the control officer did not want to do it. They're not alternatives. The simple fact that you are dealing with is could not comply. You can't throw in your own version of the facts. And then on page 7, you say Murphy, Slider, Brownlee, Little, State, that Brownlee resisted. You're a government on this appeal. You can argue to the jury, of course. You can't present it to this court. And then you come to page 15. Officer Slider and Slider attempted to place handcuffs on Brownlee. And when they had difficulty doing so, Little and Murphy grabbed Brownlee's legs. That's your facts. They had difficulty. It's not the facts that were conceded. And then, of course, you have this ambiguous thing on 15. It was only after Brownlee interjected himself into the frame. Frame normally indicates a struggle of some kind. He didn't inject himself into a struggle. He commented on it. By the way, since you wrote the brief, I think it's worth calling to your attention. But even more so, to bring the message back to the Attorney General. You don't get up here on top of an amnesty and argue the facts. Thank you, Your Honor. Mr. Snow, thank you very much. Thank you. Mr. Shea, I think you've got a minute or so remaining. Thank you, Your Honor. I'll just make a couple of brief points. You asked about a case for the proposition that the duration of confinement is the key. In Wilkinson, the case that I've cited, the Supreme Court says 544 U.S. at page 82, because neither prisoner's claim would necessarily spell speedier release, neither lies at the core of habeas corpus. The court in Wilkinson also cites Edwards v. Balasag, which is the case that Mr. Sonata referenced, and says, And Balasag, like Wolf, demonstrates that habeas remedies do not displace Section 1983 actions where success in a civil rights suit would not necessarily vitiate the legality of State confinement. Finally, this Court's opinion in Ramirez v. Galazza, 334 F. 3rd. 850, cited in our brief, resolves the specific facts of someone who was confined in administrative segregation. That was the principal outcome of his disciplinary hearing, and this Court said that he could challenge that in a Section 1983 action and did not have to proceed in habeas. I also refer to page 10 of our reply brief, where we cite Smith v. City of Hemet, an en banc decision where this Court decided to remand unqualified immunity, rather than once it had resolved the constitutional question, and allow the district court to do the second, saucier step in the first instance. And finally, I would just agree with the premise of one of Judge Smith's questions. This was a – you know, this is a factual dispute about what happened. And on Mr. Brownlee's version of the facts, the officers are taking the position that if anybody criticizes you, you are subject to whatever level of force the officers deem appropriate. In this case, that involved bending Mr. Brownlee's leg up behind him as high as it would go. If there's no further questions, thank you. All right. We thank both counsel for the argument. The Court is recessed.
judges: Noonan, Bybee, M. Smith